Keith J. Miller
Bradley A. Suiters
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, NJ 07102
Tel: (973) 690-5400
kmiller@rwmlegal.com
bsuiters@rwmlegal.com

*Attorneys for Plaintiffs*
*Braintree Laboratories, Inc., Sebela US Inc., and Azurity Pharmaceuticals, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRAINTREE LABORATORIES, INC., SEBELA US INC., and AZURITY PHARMACEUTICALS, INC., | |
| *Plaintiffs*, | Civil Action No. 25-12118 (CPO/EAP) (Consolidated) |
| v. | |
| ALKEM LABORATORIES LTD., | |
| *Defendant*. | |

**<u>PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

A. Colon Cancer Screening and Detection ........ 1

B. Plaintiffs' Innovative Colon Cleansing Formulations ........ 2

C. Defendant's ANDA Products ........ 3

D. The Claim Construction Disputes ........ 3

II. BACKGROUND ........ 4

A. The Asserted Patents ........ 4

1. The Inventions of the Asserted Patents ........ 5

B. Procedural History ........ 7

C. The Asserted Claims ........ 8

III. SUMMARY OF RELEVANT LAW ........ 8

IV. ARGUMENT ........ 10

A. The Preambles of the Asserted Independent Claims ........ 10

1. The Preambles Are Limiting ........ 11

a. The Claim Language Confirms that the Preambles Are Limiting ........ 13

i. The Method Claims of the '864 and '498 Patents ........ 13

ii. The Composition Claims of the '656 and '697 Patents ........ 14

b. The Specification Confirms the Preambles Are Limiting ........ 16

c. The Prosecution History Confirms that the Preambles Are Limiting ........ 18

2. The Preambles Should Be Given Their Plain and Ordinary Meaning ........ 19

a. The Preambles of the ’864 and ’498 Should Be Given Their Plain and Ordinary Meaning ........ 19

b. The Preamble of the ’656 Patent Should be Given its Plain and Ordinary Meaning ........ 20

B. “Consisting Essentially of” (’864 Patent) ........ 21

1. Controlling Case Law Supports Plaintiffs’ Construction ........ 23

2. The Dependent Claims Support Plaintiffs’ Construction ........ 25

3. The Specification Supports Plaintiffs’ Construction ........ 27

C. “Consisting Essentially of” and “Comprising” (’498 Patent) ........ 28

1. Plaintiffs’ Construction Properly Gives Meaning to the Term “Comprises” ........ 29

2. The Dependent Claims Confirm Plaintiffs’ Construction ........ 29

3. The Specification Supports Plaintiffs’ Construction ........ 30

V. CONCLUSION ........ 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott Laboratories v. Impax Laboratories*,
2011 WL 3235699 (D.N.J. July 25, 2011)....15

*Apple Inc. v. Corephotonics, Ltd.*,
81 F.4th 1353 (Fed. Cir. 2023) ....27, 30

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
98 F.3d 1563 (Fed. Cir. 1996)....11, 18

*AstraZeneca AB v. Dr. Reddy's Lab'ys*,
2013 WL 1847639 (D.N.J. May 1, 2013) ....20, 21, 29

*Bass Pro Trademarks, L.L.C. v. Cabela's, Inc.*,
485 F.3d 1364 (Fed. Cir. 2007)....12, 18, 19

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ....16

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
320 F.3d 1339 (Fed. Cir. 2003)....13

*Brookhill—Wilk 1, LLC v. Intuitive Surgical, Inc.*,
334 F.3d 1294 (Fed. Cir. 2003)....8

*Church & Dwight Co. v. Abbott Lab'ys*,
2007 WL 6945864 (D.N.J. Aug. 28, 2007....24

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*,
958 F.3d 1348 (Fed. Cir. 2020)....11

*Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*,
868 F.2d 1251 (Fed. Cir. 1989)....16

*E-Pass Techs., Inc. v. 3Com Corp.*,
473 F.3d 1213 (Fed. Cir. 2007)....8, 9

*Eli Lilly & Co. v. Teva Pharms. Int'l*,
8 F.4th 1331 (Fed. Cir. 2021) ....12, 13, 14, 15

*Galderma Lab'ys, L.P. v. Medinter US LLC*,
2021 WL 3171784 (D. Del. July 27, 2021) ....9, 25, 26

*Genentech, Inc. v. Amgen Inc.*,
2019 WL 2502932 (D. Del. June 17, 2019) ....................14

*Gillette Co. v. Energizer Holdings, Inc.*,
405 F.3d 1367 (Fed. Cir. 2005) ....................9, 28, 29

*Helsinn Healthcare. v. Dr. Reddy's Lab'ys*,
2015 WL 1817109 (D.N.J. Apr. 22, 2015) ....................15, 16, 17

*Impax Lab'ys, v. Lannett Holdings*,
2015 WL 7737309 (D. Del. Dec. 1, 2015) ....................16

*In re Ciprodex*,
2017 WL 2784410 (D.N.J. June 27, 2017) ....................12

*In re Hitachi Metals, Ltd.*,
603 F. App'x 976 (Fed. Cir. 2015) ....................9, 24

*In re Hubbell*,
709 F.3d 1140 (Fed. Cir. 2013) ....................24

*In re Pelz*,
379 F. App'x 975 (Fed. Cir. 2010) ....................29

*Jansen v. Rexall Sundown, Inc.*,
342 F.3d 1329 (Fed. Cir. 2003) ....................13

*Lemoine, TTC v. Mossberg Corp.*,
2021 WL 4199934 (Fed. Cir. Sept. 15, 2021) ....................10, 11

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) ....................8

*Novartis Pharms. Corp. v. Accord Healthcare Inc.*,
387 F. Supp. 3d 429 (D. Del. 2019) ....................14

*Novartis Pharms. v. Wockhardt USA*,
2014 WL 2861209 (D.N.J. June 24, 2014) ....................28

*NTP, Inc. v. Rsch. In Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ....................12, 14

*Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*,
813 F.3d 1368 (Fed. Cir. 2016) ....................19, 20, 21

*Pacing Techs., LLC v. Garmin Int'l*,
778 F.3d 1021 (Fed. Cir. 2015 ....................16

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)........................................................................ *passim*

*PPG Indus. v. Guardian Indus. Corp.*,
156 F.3d 1351 (Fed. Cir. 1998)........................................................................ *passim*

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
549 F.3d 842 (Fed. Cir. 2008)..............................................................................9

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
739 F.3d 1367 (Fed. Cir. 2014)............................................................................11

*Roberg v. 20th Century Plastics, Inc.*,
40 F. Supp. 2d 208 (D.N.J. 1999) .........................................................................10

*Sanofi Mature IP v. Mylan Lab'ys Ltd.*,
757 F. App'x 988 (Fed. Cir. 2019) .................................................................13, 16, 18

*Supernus Pharms., Inc. v. RiconPharma LLC*,
2022 WL 16362466 (D.N.J. Oct. 28, 2022)...................................................22, 29

*Unimed Pharmaceuticals, LLC v. Perrigo Co.*,
2015 WL 1094601 (D. Del. Mar. 11, 2015) .........................................................26

*Univ. of Mass. v. L'Oréal S.A.*,
36 F.4th 1374 (Fed. Cir. 2022) ..................................................................20, 21

*Yoon Ja Kim v. Earthgrains Co.*,
451 F. App'x 922 (Fed. Cir. 2011) .......................................................................24

## STATUTES

21 U.S.C. § 355(b) ..................................................................................................7

# TABLE OF EXHIBITS

| Ex. No. | Description |
|---|---|
| 1. | Siegel, et al., "Colorectal cancer statistics, 2023," Cancer J. Clin., 73:233-254 (2023), bearing Bates numbers AZ-SUT_0176601-622. |
| 2. | Meester, et al., "Colorectal Cancer Deaths Attributable to Nonuse of Screening in the United States," Ann. Epidemiol, 25(3):208-213 (Mar. 2015), bearing Bates numbers AZ-SUT_0005734-751. |
| 3. | Vemulapalli, et al., "2021 Patient Perceptions Regarding Colonoscopy Experience," J. Clin. Gastroenterol., 57:400-403 (2023), bearing Bates numbers AZ-SUT_0178631-634. |
| 4. | Highlights of Prescribing Information for OsmoPrep® (Rev. Oct. 2012), bearing Bates numbers AZ-SUT_0005185-193. |
| 5. | March 29, 2018 Notice of Allowance from the Certified File History for U.S. Patent No. 10,143,656, bearing Bates numbers AZ-SUT_0006050-059. |
| 6. | Braintree's "Dissolution Development Report and Validation Summary for BLI4700 ST24 Tablets, Item #847," bearing Bates numbers AZ-SUT_00000008-014. |
| 7. | Highlights of Prescribing Information for SUTAB (Rev. Jan. 2022), bearing Bates numbers AZ-SUT_0174239-240. |
| 8. | March 12, 2018 Amendment and Response to Office Action from the Certified File History for U.S. Patent No. 10,143,656, bearing Bates numbers AZ-SUT_0006034-046. |
| 9. | December 8, 2020 Request for Continued Examination from the Certified File History for U.S. Patent No. 11,033,498, bearing Bates numbers AZ-SUT_0006756-766. |
| 10. | July 27, 2018 Notice of Allowance from the Certified File History for U.S. Patent No. 10,143,656, bearing Bates numbers AZ-SUT_0006500-509. |

# I. INTRODUCTION

Plaintiffs Braintree Laboratories, Inc., Sebela US Inc. (together, "Braintree"), and Azurity Pharmaceuticals, Inc. ("Azurity") (collectively, "Plaintiffs") and Defendant Alkem Laboratories ("Alkem") ("Alkem" or "Defendant") dispute the meaning of five claim terms in U.S. Patent Nos. 10,143,656 (the "'656 Patent"), 11,033,498 (the "'498 Patent"), 11,382,864 (the "'864 Patent"), and 11,638,697 (the "'697 Patent") (collectively, the "Asserted Patents").[1] The Asserted Patents cover novel formulations and methods for colon cleansing, including Azurity's innovative colonoscopy preparation product, SUTAB®. SUTAB®, the first and only FDA-approved phosphate-free bowel preparation in a tablet dosage form, features a unique, balanced combination of salts that is both safe and effective.

## A. Colon Cancer Screening and Detection

In 2023, colon cancer was the second most common cause of cancer-related deaths in the United States and analysis suggests that an estimated 63% of these deaths could have been prevented through screening. *See* Ex. 1 at AZ-SUT_0176601; Ex. 2 at AZ-SUT_0005734. Indeed, the most effective way to prevent colon cancer is regular screening and early detection through colonoscopy. Medical procedures to diagnose and treat diseases of the colon, including colonoscopy, require thorough cleansing of the colon to permit adequate visualization of the intestinal mucosa. '656 Patent, 1:13-21. Before a colonoscopy, the patient's colon must be cleansed via the administration of a colonoscopy preparation product. A thoroughly cleansed colon allows a physician to identify disease and remove potentially pre-cancerous or cancerous polyps. However, formulations for colon cleansing, commonly known as bowel preps, have presented significant challenges for formulators and patients alike. For decades, patients have had

[1] The Asserted Patents share the same priority date of August 4, 2017. *See* '656 Patent (listing August 4, 2017 as filing date); '498 Patent, 1:5-7; '864 Patent, 1:5-10; '697 Patent, 1:5-10.

to drink large quantities of salty, often bad-tasting liquid to prepare for a colonoscopy. *See, e.g.*, *id* at 1:22-55. Patient dislike of bowel preps is frequently cited as the primary reason patients avoid potentially lifesaving colorectal cancer screening via colonoscopy. *See* Ex. 3 at AZ-SUT_0178631. Some patients either cannot or will not drink the amount necessary for sufficient cleansing, resulting in an inadequate "prep" that impedes effective visual examination of the colon. '656 Patent, 1:31-35.

Developing improved formulations is challenging. Bowel preps need to be safe, effective, and well-tolerated by patients. Over the years, formulators have tried to improve patient compliance by developing non-liquid bowel preps, including a sodium phosphate-based prep in tablet form. *Id.* at 1:64-2:6. However, sodium phosphate-based bowel preps had dangerous side effects, prompting the FDA to issue a "black-box warning" that those preps could cause severe kidney injury due to renal calcification. *Id.*; *see also* Ex. 4 at AZ-SUT_0005185. Ultimately, sodium phosphate-based bowel preps were withdrawn from the market in the United States.

### B. Plaintiffs' Innovative Colon Cleansing Formulations

The key to the inventions claimed in the Asserted Patents is a specific, uniquely balanced combination of three different salts: sodium sulfate, magnesium sulfate, and potassium chloride. This specific combination of salts results in phosphate-free compositions that effectively cleanse the colon without causing dangerous fluid or electrolyte shifts in patients. Being phosphate-free, the claimed formulations also avoid the dangerous side effects associated with the use of sodium phosphate in bowel preps. The claimed formulations can also be conveniently administered as swallowable tablets. This eliminates the need to drink large volumes of highly salty, often bad-tasting liquid, which increases patient compliance and thus improves the likelihood that a patient's colon is adequately prepared for colonoscopy. Indeed, in granting the Asserted Patents, the United States Patent and Trademark Office ("USPTO") recognized the unexpected and superior results

achieved by Plaintiffs' inventions, remarking that it was "unexpected" that "the claimed tablets with the specific combination and concentration of salts avoid clinically significant electrolyte shifts and cleanse the colon." Ex. 5 at AZ-SUT_0006056.

### C. Defendant's ANDA Products

Alkem is a manufacturer of generic medicines. Alkem has sought approval from the FDA to market a generic version of SUTAB® more than a decade before the expiration of the Asserted Patents. In doing so, Alkem has admitted that their proposed generic product has the same active ingredients, the same route of administration, the same dosage form, and the same strengths as SUTAB®. Still, Alkem argues that the Asserted Patents are not infringed and are invalid.

### D. The Claim Construction Disputes

There are five claim construction disputes for the Court to resolve. ***First*****,** the parties dispute whether the preambles of the asserted independent claims limit the claimed methods and formulations to colon cleansing – as Plaintiffs contend – or are not so limited – as Alkem suggests. ***Second*****,** the parties dispute whether the term "cleansing a colon" in the preambles is clear on its face – as Plaintiffs contend – or should be construed to require only "some degree" of cleansing a colon – as Alkem suggests. ***Third***, the parties dispute whether the term "solid oral formulation" is clear on its face as requiring oral administration – as Plaintiffs contend – or whether it should be construed to require only that the solid formulation "may be administered by an oral route." ***Fourth***, the parties dispute the boundaries of the term "composition consisting essentially of" in the Asserted Patents. Plaintiffs' position is that the term should be given its well-established legal meaning: the composition "can additionally include other components that do not materially affect the ***basic and novel properties of the invention***."[2] *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d

---

[2] All emphases are added unless otherwise noted.

1351, 1354 (Fed. Cir. 1998). Alkem's proposed construction, however, incorrectly focuses only on the "colon cleansing properties," without regard for the claimed invention's "basic and novel properties." ***Finally***, the parties dispute whether the term "comprises" in claim 1 of the '498 Patent should be given its well-established legal meaning – as Plaintiffs contend – or should be ignored and read out of the claim – as Alkem suggests. The Court should adopt Plaintiffs' proposed constructions because, as set forth in detail below, they properly reflect the intrinsic evidence—the claims, specification, and prosecution histories of the Asserted Patents—and follow the Federal Circuit's established law on claim construction.

## II. BACKGROUND

### A. The Asserted Patents

As the Asserted Patents explain, to permit adequate visualization of intestinal mucosa before a diagnostic or surgical procedure, the colon must be cleansed.[3] *See* '656 Patent, 1:13-19. This is especially important for examinations to detect diseases of the colon. *See id.* at 1:15-21. To cleanse the colon, patients typically consume a "bowel preparation"—a formulation that induces diarrhea and cleanses the colon. *See id.* at 1:22-29, 2:18-22. The more effective the cleanse, the better the visualization of the colon during a diagnostic procedure. *See id.* at 1:13-15. In addition, to achieve an effective cleanse, it is also important that bowel preps ensure patient safety. *See id.* at 2:18-22. For example, it is desirable to prevent significant electrolyte gains or losses from diarrhea. *See id.* at 2:10-14.

Preparing for a colonoscopy can be extremely unpleasant for patients. For decades, most bowel preparations were salty, bad-tasting liquids that had to be ingested in large volumes. *Id.* at

[3] The Asserted Patents are each titled "Solid oral sulfate salt formulations for cleaning a colon and methods of using same" and share a common specification. This brief cites to the specification of the '656 Patent for ease of reference.

1:22-55. For example, early colon cleansing products required patients to drink about a gallon of salty tasting solution over a short period of time. *See id.* at 1:22-31. Many patients experienced discomfort and could not drink the required amount. This often resulted in poor patient compliance. *See id.* at 1:31-35.

Many efforts have been made to improve bowel preparation formulations. One early attempt to solve the problem of poor patient compliance was Phospho-soda, which used a small volume of liquid solution. *Id.* at 1:35-39. Braintree also developed SUPREP®, a combination of three sulfate salts in a low-volume liquid formulation approved by the FDA in 2010. *See id.* at 1:47-55. Though these liquid solutions cleansed the colon, there remained a need for a safe, effective, and convenient alternative to liquid bowel preps.

Before the inventions of the Asserted Patents, others had tried and failed to develop safe and effective colon-cleansing tablets. For example, tablets sold under the name OsmoPrep and Visicol included phosphate salts, which were associated with risk of kidney failure due to renal calcium phosphate deposition resulting from the absorption of the phosphate anion. *Id.* at 1:40-47. The FDA issued a black box warning about the risks associated with their use. *See id.*; Ex. 4 at AZ-SUT_0005185. Other non-liquid bowel preps produced insufficient cleansing. *See* '656 Patent, 1:65-67. Moreover, some preps required patients to take large numbers of tablets and were unpalatable to many patients due to their salty taste. *See id.* at 1:67-2:4. Such preps, including Visicol, had water insoluble components that increased their turbidity and increased the possibility of visualization issues in such preparations. *See id.* at 9:2-4. Therefore, there was a need for a non-liquid colon-cleansing formulation that was safe, effective, and required fewer tablets.

### 1. <u>The Inventions of the Asserted Patents</u>

The inventors of the Asserted Patents addressed the unmet needs of patients and doctors by inventing and claiming safe and effective tablet formulations for cleansing a colon. *See id.* at

Abstract; *see also, e.g.*, *id.* at Claim 1. Specifically, the Asserted Patents describe and claim methods and formulations that contain three specific salts in specified amounts: 30-40 grams of sodium sulfate; 4-8 grams of magnesium sulfate; and 3-5 grams of potassium chloride. *See id.* at 2:42-50. These formulations work because sulfate salts, such as sodium sulfate and magnesium sulfate, are poorly absorbed by the human body when administered in sufficient amounts, and thus cause water to flow into the intestine, promoting effective colon cleansing. *Id.* at 5:36-45; *see also id.* at 2:7-10.

Additionally, the "avoidance of clinically significant electrolyte shifts can be accomplished by the proper balance of potassium chloride, magnesium sulfate, and sodium sulfate" in the claimed formulations. *Id.* at 5:39-56, 9:45-47. The specific combination of salts in the claimed formulations prevents dangerous fluid and electrolyte shifts in patients that can otherwise result from the large volume of water entering the gastrointestinal tract due to the osmotic action of the poorly absorbed sulfate anion and the resulting diarrhea.[4] *Id.* at 2:10-14, 4:40-45, 5:45-56. The claimed inventions achieve this balance by "providing sufficient amounts of sodium, magnesium, and potassium cations to avoid shifting the levels of these cations in a subject taking the compositions." *Id.* at 5:52-56. For example, the potassium chloride in the claimed compositions acts to replace patient losses of these electrolytes resulting from the induced diarrhea. Ex. 6 at AZ-SUT_0000013. Further, the claimed formulations do not contain phosphates, which were known to calcify the kidneys and lead to kidney failure. '656 Patent, 1:40-55.

Together with the three claimed salts, inactive ingredients known as "excipients" are used to make the claimed compositions into a solid form, such as a tablet. *Id.* at 4:5-17, 5:11-17, 7:18-45. As described and claimed in the Asserted Patents, it is important that any excipients be water

[4] Poorly-absorbed sulfate salts "exhibit limited uptake from the intestine" and "cause water to flow into the intestine when provided in the intestine in sufficient quantities." *Id.* at 5:36-39.

soluble because water-soluble excipients dissolve clearly, leaving no residue in the colon. By contrast, water-insoluble excipients leave residues in the colon that can interfere with diagnostic visualization of the colon. *See id.* at 7:18-50. Water-soluble excipients described in the specification include binders, lubricants, glidants, disintegrants, coatings, and combinations thereof. *See id.*; *see also id.* at 4:46-55, 8:67-6. For example, to help form a tablet, a binder such as polyethylene glycol ("PEG") can be added and blended into the composition with a lubricant, such as sodium caprylate. *See id.* at 12:50-60. Further, the composition can include other excipients, such as a coating made of "Kollicoat IR and water." *Id.* at 9:4-6.

### B. Procedural History

Azurity holds New Drug Application No. 213135 for SUTAB®, which the FDA approved on November 10, 2020, for colon cleansing in preparation for adult colonoscopy[5]. Each tablet of SUTAB® contains 1.479 g sodium sulfate, 0.225 g magnesium sulfate, and 0.188 g potassium chloride, as well as the excipients polyethylene glycol 8000, sodium caprylate, and ethylene glycol and vinyl alcohol graft copolymer. Ex. 7 at AZ-SUT_0174239-240. SUTAB® is administered in two doses of twelve tablets each – one dose the evening before colonoscopy and a second dose the morning of colonoscopy. *Id.* Pursuant to 21 U.S.C. § 355(b), the Asserted Patents are listed in the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") as having one or more claims that cover SUTAB®.

On May 15, 2025, Alkem notified Plaintiffs that it had submitted Abbreviated New Drug Application ("ANDA") No. 220426 to the FDA seeking permission to manufacture, market, use, and sell a generic version of SUTAB® before the expiration of the '656 Patent. On June 24, 2025,

---

[5] Azurity acquired the rights to SUTAB and the Asserted Patents from Braintree. D.I. 55-1. Azurity also obtained the entire interest in NDA 213135. *Id.* Azurity was added as a Plaintiff/Counterclaim Defendant in the above captioned litigation on December 29, 2025. D.I. 43.

Plaintiffs filed suit against Alkem for infringement of the ’656, ’498, ’864, and ’697 Patents. *See* D.I. 1.

### C. The Asserted Claims

Plaintiffs assert that Alkem’s proposed generic versions of SUTAB® would, if approved by the FDA, infringe claims 1-9, 11-12, 16-20 of the ’656 Patent; claims 1-13 of the ’498 Patent; claims 1-11 of the ’864 Patent; and claims 1-7 of the ’697 Patent (the “Asserted Claims”). The four independent asserted claims (claim 1 of each patent, the “Asserted Independent Claims”) are set forth in Appendix A.

## III. SUMMARY OF RELEVANT LAW

Claim construction is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 371-73 (1996). The question is what the plain and ordinary meaning of a term is to a skilled artisan as of the patent’s effective filing date. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). Determining the ordinary meaning of claim language requires that the Court look first to the intrinsic evidence. *Id.* at 1314-17. Intrinsic evidence consists of the patent claims, the specification, and the prosecution history. *Id.* A court may also consider “extrinsic evidence,” but that is less persuasive. *Id.* at 1317.

Claim construction begins with the words as they are used in the claims. *See Brookhill—Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003). When construing claims, “the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to ‘particularly point out and distinctly claim the subject matter which the patentee regards as his invention.’” *Id.* (internal citations omitted); *see also Phillips*, 415 F.3d at 1314. As such, any construction of a term must be consistent with how that term is used in the claims. *See, e.g.*, *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1220 (Fed. Cir. 2007) (the language of the claims is of “***paramount***

***importance*** to claim construction"). Other claims of the patent in question – both asserted and unasserted – can be valuable sources of enlightenment as to the meaning of a claim term. *Phillips*, 415 F.3d at 1314. For example, dependent claims reciting ingredients that are not expressly listed in the independent claim from which they depend provide strong evidence that the independent claim should also be construed as open to those additional ingredients. *See, e.g.*, *Galderma Lab'ys, L.P. v. Medinter US LLC*, 2021 WL 3171784, at *2-3 (D. Del. July 27, 2021) (construing independent claim as open to additional ingredients in light of dependent claims).

Further, claims are often drafted to recite terms of art with a settled legal meaning. For example, transitional phrases like "consisting," "comprising," and "consisting essentially of" have well-established legal meanings. *See, e.g.*, *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371 (Fed. Cir. 2005) ("comprising" "signals that the entire claim is presumptively open-ended"); *In re Hitachi Metals, Ltd.*, 603 F. App'x 976, 979 (Fed. Cir. 2015) ("[B]ecause the claims were drafted in the 'consisting essentially of' format, the scope of the claims can include those additional elements which do not materially affect the basic and novel characteristics of the claimed invention ....").

Although claim construction begins with the words of the claims, the claims do not stand alone, and instead are part of "a fully integrated written instrument." *Phillips*, 415 F.3d at 1315. The "best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history." *Id.*

A patent's prosecution history is also important intrinsic evidence. *See Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008). The prosecution history provides evidence of how the Patent Office and the patent applicants understood the patent. *Phillips*, 415 F.3d at 1317. In addition, the prosecution history is a valuable resource for the public

to determine the scope and meaning of the claims when they were allowed by the Patent Office. *See id.*

Finally, extrinsic evidence is "less significant" but nevertheless "useful" if used properly. *Id.* at 1317-19. Extrinsic evidence can provide insights into how one of ordinary skill in the art would read a term in the patent as a whole. *See id.*

## IV. ARGUMENT

### A. The Preambles of the Asserted Independent Claims

| Claim Term | Plaintiffs' Construction | Alkem's Construction |
|---|---|---|
| "A method of cleansing a colon of a subject"<br><br>'864 Patent, Claim 1 Preamble | The preamble is limiting<br><br>Plain and ordinary meaning, which is "a method of cleansing a colon of a subject" | The preamble is not limiting.<br><br>To the extent the preamble is found limiting, it should be given its plain and ordinary meaning of: "a method that may result in some degree of cleansing of a colon of the subject upon which the method is applied." |
| "A method of cleansing the colon"<br>'498 Patent, Claim 1 Preamble | The preamble is limiting<br>Plain and ordinary meaning, which is "a method of cleansing the colon" | The preamble is not limiting.<br>To the extent the preamble is found limiting, it should be given its plain and ordinary meaning of: "A method that may result in some degree of cleansing of a colon." |
| "A solid oral formulation for cleansing a colon of a subject"<br>'656 Patent, Claim 1 Preamble; '697 Patent, Claim 1 Preamble | The preamble is limiting<br>Plain and ordinary meaning, which is "a solid oral formulation for cleansing a colon of a subject" | The preamble is not limiting.<br>To the extent the preamble is found limiting, it should be given its plain and ordinary meaning of: "A formulation provided as a solid that may be administered by an oral route." |

The parties dispute whether the preambles of the Asserted Independent Claims are limiting – as Plaintiffs contend – or should be given no effect – as Alkem suggests.[6] The parties also

[6] "A patent claim typically has three parts: the preamble, the transition, and the body." *Roberg v. 20th Century Plastics, Inc.*, 40 F. Supp. 2d 208, 218 n.9 (D.N.J. 1999). "The preamble is an introductory phrase summarizing the invention, its relation to the prior art, or its intended use or properties." *Id.* "If a preamble is limiting, it becomes part of the claim" and acts as a positive (continued...)

dispute the meaning of the preambles. For the '864 and '498 Patents' preambles, Plaintiffs contend that the preambles can and should be given their plain and ordinary meaning, while Alkem has proposed constructions that either omit the express claim language "cleansing of a colon" or rewrite the term to say "may result in some degree of cleansing of a colon." Alkem's proposal, which ignores the plain meaning and import non-existent limitations into the claims, are improper and unsupported, and therefore should be rejected. Similarly, for the '656 Patent's preamble, Plaintiffs contend that the preamble can and should be given its plain and ordinary meaning, while Alkem has proposed a construction that removes the requirement of an oral administration route instead making this requirement optional by adding that the formulation "***may*** be administered by an oral route." (emphasis added). Alkem's proposal, which ignores the plain meaning and removes a required limitation from the claims by making it optional, is also improper and unsupported, and therefore should be rejected.

### 1. <u>The Preambles Are Limiting</u>

Whether preamble language is limiting is a claim construction issue. *See Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1354 (Fed. Cir. 2020). Preambles limit the invention when they "recite[] essential structure or steps, or if [they are] necessary to give life, meaning, and vitality to the claim." *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1372 (Fed. Cir. 2014) (citation omitted). "Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1572-73 (Fed. Cir. 1996).

---

limitation on the scope of the claimed invention. *Lemoine, TTC v. Mossberg Corp.*, 2021 WL 4199934, at *2 (Fed. Cir. Sept. 15, 2021).

For method claims, like the Asserted Claims of the ’864 and ’498 Patents, the Federal Circuit “has not hesitated to hold preambles limiting when they state an intended purpose for methods of using a compound.” *Eli Lilly & Co. v. Teva Pharms. Int’l*, 8 F.4th 1331, 1342 (Fed. Cir. 2021). For composition claims, like the Asserted Claims of the ’656 and ’697 Patents, preambles stating the intended purpose of the composition are limiting when, for example, they “provide antecedent basis for later claim limitations,” *i.e.*, where a later limitation in that same claim “refers back” to language recited in the preamble. *Id.* at 1341-43. This is so because by drafting the claim so that other limitations refer back to the preamble, the inventor demonstrates “a reliance on both the preamble and the claim body to define the invention.” *In re Ciprodex*, 2017 WL 2784410, at *8 (D.N.J. June 27, 2017). Further, preambles of both method and composition claims are limiting when they recite “essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim.” *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1305-06 (Fed. Cir. 2005).

The preambles of the Asserted Independent Claims are limiting because “[d]uring prosecution” and “[t]hroughout the specification, and in all the claims, the patentee described the invention[s]” as being directed to compositions and methods for colon cleansing. *Bass Pro Trademarks, L.L.C. v. Cabela’s, Inc.*, 485 F.3d 1364, 1365-1366 (Fed. Cir. 2007). ***First***, the language of the claims confirms that the preambles define the claimed inventions. Specifically, the preambles of the method claims of the ’864 and ’498 Patents not only recite the intended purpose of the claimed methods, *i.e.*, colon cleansing, but also provide antecedent basis for later limitations in those claims. Similarly, the preambles of the composition claims of the ’656 and ’697 Patents recite the essential structure of the claimed compositions and provide antecedent basis for other limitations in those claims. ***Second***, the shared specification of the Asserted Patents

repeatedly emphasizes colon cleansing as an important aspect of the inventions. ***Third***, the prosecution history shows that the patent applicant and examiner understood that the inventions were limited to compositions and methods for colon cleansing.

#### a. The Claim Language Confirms that the Preambles Are Limiting

##### i. The Method Claims of the ’864 and ’498 Patents

The claims of the ’864 and ’498 Patents are method claims. *See* ’864 Patent, Claim 1 (“A method of cleansing a colon of a subject....”); ’498 Patent, Claim 1 (“A method of cleansing the colon....”). Courts “generally construe[] statements of intended purpose in method claims as limiting.” *Eli Lilly*, 8 F.4th at 1340-41. This is because such statements of intended purpose “are not merely circumstances in which the method may be useful, but instead are the *raison d’être* of the claimed method itself.” *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003) (emphasis in original).

The preambles of claim 1 of the ’864 and ’498 Patents, which expressly state that the claimed methods are for colon cleansing, are like preambles that the Federal Circuit has found limiting in other cases. *Compare* ’864 Patent, Claim 1 (“A method of cleansing a colon of a subject....”) *and* ’498 Patent, Claim 1 (“A method of cleansing the colon....”) *with Eli Lilly*, 8 F.4th at 1335, 1343 (preamble reciting a “method for treating headache in an individual” limiting because it recited the method’s intended purpose); *see also Sanofi Mature IP v. Mylan Lab’ys Ltd.*, 757 F. App’x 988, 993-94 (Fed. Cir. 2019) (preamble reciting “[a] method of increasing survival” limiting because it “expresse[d] the “intentional purpose[— increasing survival—]” (citation omitted)); *Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1332-33 (Fed. Cir. 2003) (preamble reciting “[a] method of treating or preventing macrocytic-megaloblastic anemia” limiting because it articulated the “purpose for which the method must be performed”).

The preambles of claim 1 of the ’864 and ’498 Patents also provide antecedent basis for other claim limitations. Specifically, “[a] method of cleansing ***a colon of a subject***” as recited in claim 1 of the ’864 Patent provides antecedent basis for “cleanse ***the colon of the subject***” later in that same claim. ’864 Patent, Claim 1. Similarly, “[a] method of ***cleansing the colon***” as recited in claim 1 of the ’498 Patent provides antecedent basis for “wherein the colon cleansing composition ***cleanses the colon***” later in that same claim. ’498 Patent, Claim 1. Courts addressing similar claims have found preambles limiting. *See, e.g.*, *Eli Lilly*, 8 F.4th at 1343 (preambles were limiting where, “[i]n addition to giving life and meaning to the method step of each claim, the preambles also provide[d] antecedent basis for at least one later claim term in the independent claims”); *Novartis Pharms. Corp. v. Accord Healthcare Inc.*, 387 F. Supp. 3d 429, 436 (D. Del. 2019) (preambles reciting “the subject” supplied antecedent basis for the term “said subject” and “breathe life into the claims”); *Genentech, Inc. v. Amgen Inc.*, 2019 WL 2502932, at *10 (D. Del. June 17, 2019) (“The term ‘subject’ in the preamble to claim 2 provides antecedent basis for ‘said subject’ in the body of the claim and, therefore, the preamble is limiting.”).

**ii. The Composition Claims of the ’656 and ’697 Patents**

The Asserted Claims of the ’656 and ’697 Patents are directed to solid oral formulations for colon cleansing. *See* ’656 Patent, Claim 1 (“A solid oral formulation for cleansing a colon . . . .”); ’697 Patent, Claim 1 (same). The preambles of claim 1 of the ’656 and ’697 Patents are necessarily limiting because the term “solid oral formulation” in these preambles recites “essential structure or steps ... that is important to the invention or necessary to give meaning to the claim.” *See NTP, Inc.*, 418 F.3d at 1305-06. Accordingly, without the limitation in the preambles, the claims would omit an essential structural feature—solid oral formulation—and only recite the ingredients of those formulations without providing limitations on their structure.

Under similar circumstances, courts in this district have found preambles limiting. For example, in *Abbott Laboratories v. Impax Laboratories*, the preamble "a pharmaceutical formulation in a form of molecular dispersion" was found to be a structural limitation. 2011 WL 3235699, at *3 (D.N.J. July 25, 2011). In so finding, the court analogized the formulation claims to baking, explaining that just as a baker would not know what to do with a recipe with butter, flour, and sugar without a guide that the product should be "in the form of a cookie" (rather than, *e.g.*, a cake), a skilled artisan would not know the type of formulation without the preamble. *Id.*; *see also Helsinn Healthcare. v. Dr. Reddy's Lab'ys,* 2015 WL 1817109, at *11-12 (D.N.J. Apr. 22, 2015) ( "formulation for intravenous administration [to a human]" limiting as structural language). So too here, the preamble's reference to "a solid oral formulation" is a structural limitation necessary to understand the claims' scope. Therefore, the preambles in the claims of the '656 and '697 Patents are necessarily limiting.

Further, as with method claims, statements of intended purpose in the preamble of a formulation claim can be limiting. *Eli Lilly*, 8 F.4th at 1340-41. Here, the claimed formulations, like the claimed methods, are directed to a particular purpose: colon cleansing. The Federal Circuit has repeatedly held that such preambles are limiting where they provide antecedent basis to other limitations that appear later in the body of the claim. *See, e.g.*, *id.* at 1341 (collecting cases where preambles reciting statements of intended purpose were limiting because they provided antecedent basis for other limitations). The preambles of claim 1 of the '656 and '697 Patents provide antecedent basis for language that follows in the body of the claim. Specifically, the preambles of both claims recite "[***a***] ***solid oral formulation*** for cleansing a colon of a subject," which provides antecedent basis for the subsequent claim language "***the formulation*** comprising...." '656 Patent, Claim 1; '697 Patent, Claim 1.

In construing similar claims, courts have found preambles limiting because the preambles reflect the patentee's choice "to use both the preamble and the body of the claim to define the subject matter of the claimed invention." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952-53 (Fed. Cir. 2006) (preamble reciting "[a]n emergence cuff member for use in preserving the interdental papilla ..." was limiting where the body of the claim "derive[d] their antecedent basis from the preamble"); *see also, e.g.*, *Pacing Techs., LLC v. Garmin Int'l*, 778 F.3d 1021, 1024 (Fed. Cir. 2015) (preamble reciting "[a] repetitive motion pacing system ***for pacing a user***" limiting because it "provide[d] antecedent basis" for "a web site adapted to allowing ***the user*** to preselect [certain activities]"); *Impax Lab'ys, v. Lannett Holdings*, 2015 WL 7737309, at *3 (D. Del. Dec. 1, 2015) (preamble language "pharmaceutical ***formulation***" provided antecedent basis for "the ***formulation***"). Here, the preambles of both claims are limiting because they are "necessary to understand" ***which*** formulation comprises the three claimed salts, *i.e.*, the "solid oral formulation for cleansing a colon of a subject." '656 Patent, Claim 1; '697 Patent, Claim 1; *see also Pacing Techs.*, 778 F.3d at 1024 (preambles providing antecedent basis for other claim limitations were limiting).

**b. The Specification Confirms the Preambles Are Limiting**

Courts also look to the specification to determine whether preambles are limiting. *See Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). A specification's repeated emphasis that the technical elements recited in the preamble are "an important aspect of the invention" is strong evidence that the preamble is limiting. *See, e.g.*, *Sanofi*, 757 F. App'x at 993 (preamble reciting "[a] method of increasing survival" was limiting in part because the specification "emphasize[d] increasing survival as an important aspect of the invention"); *Helsinn*, 2015 WL 1817109 at *15 (preamble of a "pharmaceutical single-use, unit-dose formulation for intravenous administration to a human to reduce the likelihood of cancer

chemotherapy-induced nausea and vomiting" limiting where specification made "frequent references ... to the claimed formulations to treat emesis").

Here, the shared specification of the Asserted Patents is focused on methods and formulations for cleansing a colon and emphasizes that colon cleansing is an important aspect of the invention. The title of the patents is "[s]olid oral sulfate salt formulations ***for cleaning a colon*** and methods of using same." '656 Patent, Title. Similarly, the abstract explains that the claimed "compositions and formulations are ***useful to cleanse the colon*** when administered in sufficient quantities." *Id.* at Abstract. The specification is replete with other statements that demonstrate with equal clarity that colon cleansing is a critical aspect of the invention. *See, e.g.*, *id.* at 2:18-38 ("Disclosed herein are compositions ... that are effective and safe ***to cleanse the colon of a subject***."); *id.* at 4:14-17 ("The methods allow for administration of the solid oral formulation such that the formulation induces purgation of the subject's colon such that the ***colon is cleansed*** of fecal matter."); *id.* at 5:8-11 ("Tablet ***Cleansing Formulations***"); *id.* at 5:31-36 ("In particular uses, sufficient sodium sulfate to participate in ***cleansing the colon*** is administered over a period of time ...."); *id.* at 6:10-11 (a "***cleansing dose*** can be administered in two or more administrations").

The specification also includes an example directed to testing whether tablet formulations of the invention are as safe and effective for cleansing as commercially available bowel preps. *See, e.g.*, *id.* at 17:15-19 ("The intent of these studies was to develop a tablet formulation with similar stool volume output and percent stool solids (***surrogates for cleansing***) and stool electrolyte balance relative to the FDA approved commercial control preparations."); *id.* at Table 6 (providing "Mean Stool Output" for "Control Preparations" that are commercial colon cleansing preps); *id.* at 17:33-38 ("Table 6 shows the mean stool output results for each of the control

preparations .... These preparations have been approved by FDA for ***bowel cleansing for colonoscopy***.”); *id.* at 17:52-54 (“As indicated in Table 7, a stool percent solids result less than 5% would be expected to correlate with acceptable colonoscopy ***cleansing***....”); *id.* at Table 7 (providing “Mean Stool Percent Solids” for “Control Preparations”); *id.* at 19:12-19 (providing test results for tablet formulations of the invention, noting “the average percent fecal solids of the lowest fecal solids result measured following each dose of tablets (a measure of ***colon cleansing***) was the same or better” than commercial preps); *id.* at 20:30-33 (“Tablet formulas were evaluated for performance with respect to ***bowel cleansing*** surrogate markers....”). This disclosure confirms that the preambles recite the essence of the claimed inventions, *i.e.*, compositions and methods for colon cleansing, and are limiting. *See, e.g.*, *Sanofi*, 757 F. App’x at 993 (example in specification evidence that a preamble reciting “increasing survival” was limiting because it “highlights that patients in the [cohort given the claimed composition] demonstrated increased *overall survival rates*” (emphasis in original)); *Bass Pro*, 485 F.3d at 1365.

#### c. The Prosecution History Confirms that the Preambles Are Limiting

Whether preambles are limiting can also be “illuminated in the prosecution history.” *Applied Materials*, 98 F.3d at 1572-73. During prosecution, Braintree distinguished references based on their colon cleansing properties. *See, e.g.*, Ex. 8 at AZ-SUT_0006040 (distinguishing prior art because it “does not teach or suggest formulating tablets that avoid clinically significant electrolyte shifts ***and cleanse the colon***”); Ex. 9 at AZ-SUT_0006763 (distinguishing prior art method because it “provides a substantial amount of fluid to the patient during ***the cleansing methodology***”). Further, the Patent Office recognized that the claims require colon cleansing and, for at least the ’656 Patent, “a solid oral formulation.” Ex. 5 at AZ-SUT_0006057 (“An updated prior art search did not disclose a reference that teaches ***a method of cleansing a colon of a subject***

comprising the steps recited in the instant claims. Therefore, the claimed invention is patentable."); Ex. 10 at AZ-SUT_0006506 (allowing claims of '656 Patent because art did "not disclose the limitations of ***a solid oral formulation for cleansing a colon*** of a subject; the formulation comprising ... as recited in the instant claims"). This prosecution history provides additional evidence that the claimed inventions were understood as limited to colon cleansing applications and, in the case of the composition claims, to solid oral formulations. *See, e.g.*, *Bass Pro*, 485 F.3d at 1369 (preamble reciting "[a] combination vest and pivotable seat member" limiting where it was "clear that th[e] patentee procured the patent based on the 'unique combination of vest and pivotable seat member'").

### 2. <u>The Preambles Should Be Given Their Plain and Ordinary Meaning</u>

The preambles should also be given their plain and ordinary meaning, and not rewritten as Alkem suggests. The starting point for claim construction is the plain and ordinary meaning of the term to a skilled artisan as of the patent's effective filing date. *See Phillips*, 415 F.3d at 1312-13.

#### a. The Preambles of the '864 and '498 Should Be Given Their Plain and Ordinary Meaning

The terms "cleansing a colon" (as used in the '656, '697, and '864 Patents) or "cleansing the colon" (as used in the '498 Patent) have a plain and ordinary meaning that require no construction. *See, e.g.*, *Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368, 1373 (Fed. Cir. 2016) (affirming district court's decision to give "identifying" its "plain and ordinary meaning" where there was "'no indication that the inventors intended to use this term differently from its commonly understood meaning'" (internal citation omitted)). The specification applies the plain and ordinary meaning of "colon cleansing," explaining that the colon is "cleansed of fecal matter to permit adequate visualization of the intestinal mucosa" for

"performing medical or diagnostic procedures." '656 Patent, 1:13-15; *see also* '864 Patent, Claim 11 (claim directed to administration for a "diagnostic procedure").

Alkem asserts that "cleansing a colon" should be construed as "may result in some degree of cleansing of a colon." D.I. 85-2 at 1, 6. But Alkem's proposed construction has no evidentiary support. The words "some degree" do not appear anywhere in the claims or specification, and would re-write the claims to inject vagueness into an otherwise clear term. This is improper. *See, e.g.*, *Univ. of Mass. v. L'Oréal S.A.*, 36 F.4th 1374, 1381 (Fed. Cir. 2022) (rejecting claim "interpretation that would call for a rewrite of the" claim language because "[t]he need for a departure from the natural meaning confirm[ed] that [plaintiff] 's asserted meaning is not plain"). Alkem's proposed construction also contradicts the specification's description of colon cleansing as sufficient to permit adequate visualization of the intestinal mucosa. Finally, Alkem's proposed constructions for "[a] solid oral formulation for cleansing a colon of a subject" as recited in claim 1 of the '656 and '697 Patents omit the concept of colon cleansing completely, contrary to the plain language of the claims. *See, e.g.*, *AstraZeneca AB v. Dr. Reddy's Lab'ys*, 2013 WL 1847639, at *4 (D.N.J. May 1, 2013) (rejecting a construction that "improperly read[] out" claim language). The Court should reject Alkem's proposed constructions and adopt the plain and ordinary meaning of colon cleansing.

#### b. The Preamble of the '656 Patent Should be Given its Plain and Ordinary Meaning

The term "[a] solid oral formulation" (as used in the '656 and '697 Patents) or "solid oral dosage form" (as used in the '864 Patent) or "oral dosage form" (as used in the '498 Patent) have a plain and ordinary meaning that require no construction. *See, e.g.*, *Nuance Commc'ns*, 813 F.3d at 1373 (affirming district court's decision to give "identifying" its "plain and ordinary meaning" where there was "'no indication that the inventors intended to use this term differently from its

commonly understood meaning'" (internal citation omitted)). The specification applies the plain and ordinary meaning of "solid oral dosage form," explaining that the "method of cleansing a colon" comprises "administering a solid oral formulation." '656 Patent, 3:55-57. The specification also applies that the methods "comprise orally administering" tablets as needed to a patient. *Id.* at 10:62-64.

Alkem asserts that "[a] solid oral formulation" should be construed as "[a] formulation provided as a solid that may be administered by an oral route." D.I. 85-2 at 10. But Alkem's proposed construction has no evidentiary support. The words "may be administered" do not appear anywhere in the claims or specification, and would re-write the claims to remove a required limitation in place of an optional one to the effect of inserting vagueness into a clear term. This is improper. *See, e.g.*, *Univ. of Mass.*, 36 F.4th at 1381 (rejecting claim "interpretation that would call for a rewrite of the" claim language because "[t]he need for a departure from the natural meaning confirm[ed] that [plaintiff] 's asserted meaning is not plain"). Alkem's proposed construction also contradicts the specification's description that the solid formulation is administered orally. Finally, Alkem's proposed constructions for "[a] solid oral formulation for cleansing a colon of a subject" as recited in claim 1 of the '656 and '697 Patents omit the oral administration requirement by making it optional, contrary to the plain language of the claims. *See, e.g., AstraZeneca AB*, 2013 WL 1847639 at *4 (rejecting a construction that "improperly read[] out" claim language). The Court should reject Alkem's proposed constructions and adopt the plain and ordinary meaning of a solid oral formulation.

**B. "Consisting Essentially of" ('864 Patent)**

| Claim Term | Plaintiffs' Construction | Alkem's Construction |
|---|---|---|
| "composition consisting essentially of about 17.75 grams of sodium | Plain and ordinary meaning, i.e., "composition that includes about 17.75 grams of sodium sulfate, | "the composition contains no other ingredients that materially impact the colon |

| | | |
|---|---|---|
| sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride” | about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride, and can additionally include other components that do not materially affect the basic and novel properties of that composition” | cleansing properties of the composition besides 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride” |

The parties dispute the meaning of the term “consisting essentially of” in claim 1 of the ’864 Patent. The Federal Circuit has repeatedly held that the claim term “consisting essentially of” signifies “the invention necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel properties of the invention.” *PPG Indus.*, 156 F.3d at 1354. Consistent with the Federal Circuit’s definition of “consisting essentially of,” Plaintiffs’ construction states that the claimed composition may include components other than sodium sulfate, magnesium sulfate and potassium chloride, provided that those components “do not materially affect ***the basic and novel properties*** of that composition.” *Id.* Alkem’s proposed construction, however, does not refer to “basic and novel properties” but only to “***the colon cleansing properties*** of the composition.”[7] Alkem’s narrow focus on “colon cleansing properties” is contrary to case law and at odds with intrinsic evidence that confirms the basic and novel properties of the claimed invention include properties other than just colon cleansing.

The basic and novel properties of the invention of claim 1 of the ’864 Patent include the specific, balanced combination of sodium sulfate, magnesium sulfate, and potassium chloride in the claimed amounts, which resulted in a phosphate-free composition that is both effective and safe, *i.e.*, did not cause dangerous changes in patient fluid or electrolyte levels. *See, e.g.*, ’656

[7] Alkem’s proposed construction also appears to omit the word “about” from “about 17.75 grams of sodium sulfate.” D.I. 85-2 at 17. To the extent this was intentional, Plaintiffs reserve the right to address the impropriety of reading this language out of the claim in its response brief. *See Supernus Pharms., Inc. v. RiconPharma LLC*, 2022 WL 16362466, at *3 (D.N.J. Oct. 28, 2022) (rejecting construction that “effectively reads out” language from the claim).

Patent, 2:18-38 ("Disclosed herein are compositions ... that are effective and safe to cleanse the colon of a subject."); *see also id.* at 2:7-14 ("[T]he inventors have discovered that sulfate salt formulations require only two salts (sodium and magnesium sulfate)" and "that formulations lacking potassium sulfate can be formulated to prevent electrolyte gains or losses from the resulting cleansing diarrhea."); *id.* at 1:64-2:6 (prior "non-aqueous formulations of sulfate and phosphate salts" had "insufficient cleansing and potential safety issues"); *id.* at 11:23-39 (discussing method of administering the claimed colon cleansing composition to avoid dehydration).

Alkem's proposed construction properly allows for the inclusion of ingredients in the claimed formulation that do not impact these basic and novel properties, including, for example, excipients like sodium caprylate and polyethylene glycol. *See, e.g.*, *id.* at 4:46-55 ("[T]he one or more soluble excipients are selected from the group consisting of micronized polyethylene glycol, sodium dodecyl sulfate, sodium lauryl sulfate, sodium stearyl fumarate, sodium benzoate, sodium caprylate, and combinations thereof."). By contrast, under Alkem's proposed construction, the claimed composition could include ingredients that cause dangerous changes in patient fluid or electrolyte levels. *See, e.g.*, *id.* at 2:7-14. In other words, Alkem's construction focuses narrowly on colon cleansing, but the claims and specification make clear that the inventions are about more than that.

### 1. <u>Controlling Case Law Supports Plaintiffs' Construction</u>

Here, there can be no dispute that as of the August 4, 2017, priority date of the '864 Patent, the plain and ordinary meaning of "consisting essentially of" was as Plaintiffs propose. *See Phillips*, 415 F.3d at 1312-13. In 1998, the Federal Circuit held that by "using the term 'consisting essentially of,' the drafter signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel properties of the

invention." *PPG Indus.*, 156 F.3d at 1354. That precedent has been black letter law ever since. *See, e.g.*, *In re Hitachi Metals*, 603 F. App'x at 979 ("[B]ecause the claims were drafted in the 'consisting essentially of' format, the scope of the claims can include those additional elements which do not materially affect the basic and novel characteristics of the claimed invention...."); *Yoon Ja Kim v. Earthgrains Co.*, 451 F. App'x 922, 925 (Fed. Cir. 2011) (a "composition consisting essentially of" certain ingredients was broader than a "composition consisting of" nearly identical ingredients).

Accordingly, courts in this district routinely construe "consisting essentially of" in a manner consistent with Plaintiffs' proposed construction. *See, e.g.*, *Church & Dwight Co. v. Abbott Lab'ys*, 2007 WL 6945864, at *2 (D.N.J. Aug. 28, 2007) (construing "solution consisting essentially of said conjugate" as "a solution, including the conjugate and any other materials that do not materially affect the basic and novel properties of the invention"). Guidance from the Patent Office further supports Plaintiffs' proposed construction. According to the Manual of Patent Examining Procedure ("MPEP"), the term "consisting essentially of" "limit[ed] the scope of a claim to the specified materials or steps 'and those that do not <u>materially</u> affect the <u>basic</u> and characteristic(s)' of the claimed invention."[8] MPEP § 2111.03 (8th ed. Rev. Aug. 2012), https://www.uspto.gov/web/offices/pac/mpep/old/e9r07-2015_nov/mpep-2100.pdf (emphasis in original).

Alkem's proposed construction ignores the settled legal meaning of "consisting essentially of" and reads into the term an unsupported focus on "colon cleansing properties" without regard

[8] "Although the MPEP is not binding," courts "can take judicial notice" of the MPEP so long as the relevant provision of the MPEP does not "conflict with statutory text." *In re Hubbell*, 709 F.3d 1140, 1146 (Fed. Cir. 2013).

for the claimed invention's "basic and novel properties."[9] This is not correct because the "basic and novel properties" of the claimed invention cannot be summed up simply as "colon cleansing." Alkem's position should be rejected as inconsistent with binding precedent.

In view of the clear guidance from both the Federal Circuit and Patent Office, the term a "composition consisting essentially of about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride" should be construed as a "composition that includes about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride, ***and can additionally include other components that do not materially affect the basic and novel properties of that composition***."

**2. <u>The Dependent Claims Support Plaintiffs' Construction</u>**

The dependent claims of the '864 Patent further support Plaintiffs' proposal. The dependent claims list examples of the additional components that can be included in the composition of claim 1 without materially affecting the basic and novel properties of the claimed invention. Specifically, the dependent claims confirm that the claimed composition can include additional ingredients such as sodium caprylate and PEG, two of the excipients in SUTAB® tablets. Ex. 7.

The Federal Circuit has explained that "[o]ther claims of the patent in question" can be a "valuable sourc[e] of enlightenment" as to the meaning of a disputed term. *Phillips*, 415 F.3d at 1314. As such, dependent claims reciting "additional ingredients" are strong evidence that the claims from which they depend should be construed as open to those ingredients as well. *See, e.g.*, *Galderma Lab'ys*, 2021 WL 3171784 at *2. For example, in *Galderma*, the court construed claim

---

[9] Alkem's proposed construction also replaces the "materially affect" standard with its own "materially impact" construction. *See, e.g.*, *PPG Indus.*, F.3d at 1354. To the extent Alkem contends there is any difference between these two articulations, Braintree reserves the right to address this.

1, which recited "a freeze-dried composition of" microparticles and a hydrogel precursor, as "[t]he freeze-dried composition consisting essentially of the listed components." *Id.* Accordingly, the court determined that the claimed composition was open to additional components that did not materially affect the basic and novel properties of the invention. *Id.* In doing so, the court pointed to the fact that "claims 4 and 9, which depend from claim 1, recite a 'hydrogel precursor compris[ing]' additional ingredients and a 'reconstitutable product ... further comprising a surfactant.'" *Id.* (alterations in original). The court concluded that the "freeze-dried composition" "was not intended to be closed to just the claimed 'microparticles' and 'hydrogel precursor.'" *Id.*

Similarly, in *Unimed Pharmaceuticals, LLC v. Perrigo Co*., the independent claim recited a "pharmaceutical composition consisting essentially of [specific ingredients]." 2015 WL 1094601, at *2 (D. Del. Mar. 11, 2015). The court looked to a dependent claim that recited a specific additional ingredient as evidence that the independent claim had to be open to that ingredient as well, confirming that independent claims containing a "consisting essentially of" term are presumptively open to additional ingredients listed in their dependent claims. *Id.* at 7.

Here, the dependent claims of the '864 Patent make clear that claim 1 should be construed to encompass compositions that include additional ingredients such as sodium caprylate and PEG. For example, claim 2 depends on claim 1 and recites "wherein the composition further comprises polyethylene glycol." '864 Patent, Claim 2. Claim 3 also depends on claim 1 and additionally provides "wherein the composition further comprises one or more water-soluble excipients." *Id.* at Claim 3. Finally, claim 4 depends on claim 3 and further provides "wherein the one or more water-soluble excipients comprises sodium caprylate." *Id.* at Claim 4. These dependent claims confirm that the inclusion of such excipients does not materially affect the basic and novel

properties of the claimed invention. Plaintiffs' proposed construction of "consisting essentially of" should be adopted.

### 3. <u>The Specification Supports Plaintiffs' Construction</u>

The shared specification confirms that Plaintiffs' proposed construction is correct. The specification makes clear that the claimed compositions can include other components that do not materially affect the basic and novel properties of the claimed invention. For example, the shared specification states that the claimed compositions can include "one or more excipients" including binders, lubricants, coatings, and a range of specific water-soluble excipients. '656 Patent, 7:18-45; *id.* at 9:4-6. The specification also provides specific examples of the types of materials that can be used as excipients in the claimed compositions, such as "one or more water soluble excipients" selected from "the group consisting of polyethylene glycol, such as PEG-8000, sodium dodecyl sulfate, sodium lauryl sulfate, sodium benzoate, sodium stearyl fumarate, sodium caprylate and combinations thereof." *Id.* at 4:56-63. The specification thus makes clear that these excipients would not materially affect the basic and novel properties of the claimed composition. Given this disclosed embodiment, any construction that would exclude a binder, lubricant, and coating from the claimed compositions is inconsistent with the specification. *See, e.g.*, *Apple Inc. v. Corephotonics, Ltd.*, 81 F.4th 1353, 1359 (Fed. Cir. 2023) (constructions should not "omit a disclosed embodiment absent clear evidence to the contrary").

The specification also confirms that the claimed compositions cannot include additional components that would cause dangerous fluid shifts or changes in the "electrolyte gains or losses from the resulting cleansing diarrhea following ingestion." '656 Patent, 2:10-14; *see also id.* at 7:10-17; *id.* at 16:46-49. A construction focused solely on colon cleansing—like the one Alkem advances— would not address these other basic and novel properties of the claimed inventions.

For at least these reasons, this Court should adopt Plaintiffs' proposed construction.

### C. "Consisting Essentially of" and "Comprising" ('498 Patent)

| Claim Term | Plaintiffs' Construction | Alkem's Construction |
|---|---|---|
| "colon cleansing composition consisting essentially of [an/the] oral dosage form that comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride" | Plain and ordinary meaning, which is, "a colon cleansing composition that includes an oral dosage form and can additionally include other components that do not materially affect the basic and novel properties of that composition; wherein the oral dosage form comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride" | "the composition contains no other ingredients that materially impact the colon cleansing properties of the dosage form besides 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride." |

Claim 1 of the '498 Patent claims a method of cleansing the colon using a "colon cleansing composition ***consisting essentially*** of [an/the] oral dosage form that ***comprises***" specific salts. '498 Patent, Claim 1. The parties' dispute centers on whether the claim term "comprises" should be given its well-established meaning. Like "consisting essentially of," "comprises" is a term of art with a well-settled legal meaning in patent law, and "signals that the entire claim is presumptively ***open-ended***" such that other elements may be included. *Gillette*, 405 F.3d at 1371. Plaintiffs' proposed construction properly reflects that claim 1 uses the open-ended term "comprises" to expressly permit the oral dosage form to have ingredients in addition to the specifically claimed salts.

By contrast, Alkem ignores and entirely omits the term "comprises" from its proposed construction. As such, Alkem's proposal runs afoul of the "well-settled [rule] that 'claims are interpretated with an eye toward giving effect to all terms in the claim.'"[10] *Novartis Pharms. v. Wockhardt USA*, 2014 WL 2861209, at *9 (D.N.J. June 24, 2014) (citation omitted); *see also*

---

[10] As with claim 1 of the '864 Patent, Alkem omits the claim language "about" from "about 17.75 grams of sodium sulfate," which is improper. Further, for the reasons explained above, Alkem's construction impermissibly departs from the plain and ordinary meaning of "consisting essentially of."

*AstraZeneca*, 2013 WL 1847639 at *4 (construction "improperly read[] out" claim language); *Supernus Pharms.*, 2022 WL 16362466 at *3 (similar). Accordingly, this Court should adopt Plaintiffs' construction, which gives meaning to all the words of the claim and is consistent with the intrinsic evidence.

#### 1. <u>Plaintiffs' Construction Properly Gives Meaning to the Term "Comprises"</u>

Claim 1 is a method of cleansing the colon that requires administering a "composition ***consisting essentially of*** an oral dosage form that ***comprises***" specific salts. '498 Patent, Claim 1. The term "consisting essentially of" in claim 1 signifies that the claimed method necessarily includes the administration of "an oral dosage form" to cleanse the colon, but is open to additional elements that do not materially affect the basic and novel characteristics of the claimed invention. *See supra* Section IV.B. The claim language "oral dosage form that ***comprises*** [three specific salts]," however, means that the claimed oral dosage form must contain those three salts, but can also include any other desired ingredients, including laxatives and excipients. '498 Patent, Claim 1; *see, e.g.*, *Gillette*, 405 F.3d at 1371. Therefore, the claimed method of colon cleansing requires that (1) the composition administered to a patient "consist essentially of" an oral dosage form (*i.e.*, the thing that cleanses the colon must be taken orally by a patient) and (2) that the oral dosage form itself "comprises" three specific salts (*i.e.*, must contain those salts, but can contain additional ingredients). Plaintiffs' proposed construction is therefore consistent with this claim language because it gives meaning to both well-defined terms—"consisting essentially of" and "comprises." *See In re Pelz*, 379 F. App'x 975, 978 (Fed. Cir. 2010).

#### 2. <u>The Dependent Claims Confirm Plaintiffs' Construction</u>

The dependent claims of the '498 Patent confirm that the term "comprises" should be given effect in claim 1. *See Phillips*, 415 F.3d at 1314. Specifically, dependent claims 5-8 of the '498

Patent depend from claim 1 and provide that the claimed "oral dosage form" further comprises sodium caprylate, PEG, or a combination thereof. *See* '498 Patent, Claim 5 ("oral dosage form comprises sodium caprylate"); *id.* at Claim 6 ("oral dosage form comprises polyethylene glycol"); *id.* at Claim 7 ("oral dosage form comprises sodium caprylate and polyethylene glycol"); *id.* at Claim 8 (reciting specific amounts of sodium caprylate and PEG). This claim language supports Plaintiffs' construction; it confirms that the oral dosage form of claim 1 is open to additional, unrecited ingredients, such as PEG and sodium caprylate.

**3. <u>The Specification Supports Plaintiffs' Construction</u>**

The shared specification further supports Plaintiffs' proposed construction. The specification discloses that in some embodiments, "[t]he pharmaceutical tablet formulations can further comprise one or more excipients." *See, e.g.*, '656 Patent, 7:18-45. Further, the specification teaches that "the disclosed formulations [can] include the addition of other agents to assist in the cleansing of the colon of a subject ... included in the tablet formulations ...." *Id.* at 7:61-65. Thus, the specification confirms that the claimed oral dosage form can include additional ingredients beyond the three claimed salts.

Alkem's proposed construction fails to give effect to the term "comprises." Not only does Alkem's construction read the word "comprises" out of the claim— which is legally improper—it is contrary to the specification's disclosed embodiments that include additional laxative agents within an oral dosage form. *Apple*, 81 F.4th at 1359 (constructions generally should not "omit a disclosed embodiment"). The Court should reject Alkem's legally improper proposal.

For at least these reasons, the Court should adopt Plaintiffs' proposed construction.

## V. CONCLUSION

Plaintiffs respectfully request that the Court adopt their proposed constructions.

Dated: August 24, 2026

Respectfully submitted,

<u>*s/ Keith J. Miller*</u>

Keith J. Miller, Esq.
Bradley A. Suiters, Esq.
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, NJ 07102
Tel: (973) 690-5400
Fax: (973) 466-2761
kmiller@rwmlegal.com
bsuiters@rwmlegal.com

*Attorneys for Plaintiffs Braintree Laboratories, Inc., Sebela US Inc., and Azurity Pharmaceuticals, Inc.*

OF COUNSEL:

Lisa J. Pirozzolo
WILMERHALE
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Christopher R. Noyes
Gabriel Rosanio
Lauren E. Matlock-Colangelo
WILMERHALE
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800

*Attorneys for Plaintiffs Braintree Laboratories, Inc. and Sebela US Inc.*

Wendy L. Devine
Wilson Sonsini Goodrich & Rosati P.C.
One Market Plaza
Spear Tower, Suite 3400
San Francisco, CA 94105-1126
Tel: (415) 947-2000

Mark A. Hayden
Wilson Sonsini Goodrich & Rosati P.C.
31 West 52nd Street
Fifth Floor
New York, NY 10019
Tel: (212) 999-5800

*Attorneys for Plaintiff Azurity Pharmaceuticals, Inc.*