Rebekah R. Conroy, Esq.
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, NJ 07932
Tel: (973) 400-4181
rconroy@stoneconroy.com

**OF COUNSEL:**
Neal Seth
WOODS ROGERS
VANDEVENTER BLACK PLC
1765 Greensboro Station Place
Suite 900
Tysons, VA 22102
Tel: (703) 215-8208
neal.seth@woodsrogers.com
*Attorneys for Defendant Alkem Laboratories Ltd.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRAINTREE LABORATORIES, INC., SEBELA US INC., and AZURITY PHARMACEUTICALS, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALKEM LABORATORIES LTD<br><br>*Defendants*. | Civil Action No. 1:25-cv-12118-CPO-EAP |

**ALKEM LABORATORIES LTD. AND HETERO USA, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

# Table of Contents

I. INTRODUCTION .......... 4

II. THE ASSERTED PATENTS .......... 5

III. LEGAL STANDARDS .......... 6

IV. ARGUMENT .......... 8

A. "Consisting Essentially Of" Terms .......... 8

1. Alkem's Construction Identifies The Basic And Novel Properties .......... 9

2. The Court Should Not Adopt Plaintiffs' Non-Construction .......... 13

B. The Preambles Are Not Limiting .......... 15

1. The Method Patents .......... 16

2. The Composition Patents .......... 19

3. To The Extent The Preambles Are Limiting, The Court Should Adopt Alkem's Proposed Constructions .......... 21

4. The Prosecution Histories Do Not Support Construing The Preambles as Limitations .......... 23

V. CONCLUSION .......... 24

# Table of Authorities

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294 (Fed. Cir. 2001)............. 7

*Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336 (Fed. Cir. 2002) .................................. 7

*Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354 (Fed. Cir. 2010) .......................................... 8

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) ...................................................... 7

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368 (Fed. Cir. 2001)............... 17

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002) ..................... 7

*CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F4th 1289 (Fed. Cir. 2021) .......................... 13

*Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973 (Fed. Cir. 1999) ................................................ 7

*HZNP Meds. LLC v. Actavis Lab'ys UT, Inc.,* 940 F.3d 680 (Fed. Cir. 2019).............................. 6

*In re Herz*, 537 F.2d 549 (C.C.P.A. 1976)....................................................................................... 6

*Marrin v. Griffin*, 599 F.3d 1290 (Fed. Cir. 2010) ........................................................................ 7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 5

*PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351 (Fed. Cir. 1998) ....................................... 6

*Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929 (Fed. Cir. 2013)............................. 7

*Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) ....................................... 19

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283 (Fed. Cir. 2015)............................ 18

*Symantec Corp. v. Comp. Assocs. Int'l, Inc.*, 522 F.3d 1279 (Fed. Cir. 2008)............................ 18

*TomTom, Inc. v. Adolph*, 790 F.3d 1315 (Fed. Cir. 2015)......................................................... 21

## I. INTRODUCTION

Defendant Alkem Laboratories Ltd. ("Alkem") submitted an Abbreviated New Drug Application ("ANDA") seeking approval to market a generic version of SUTAB® tablets. SUTAB® tablets are used as an osmotic laxative for cleansing the colon in preparation for colonoscopy procedures. Plaintiffs Braintree Laboratories, Inc. and Sebela US Inc. (collectively, "Braintree" or "Plaintiffs") sued Alkem for infringement of U.S. Patent Nos. 10,143,656 (the "'656 Patent"), 11,033498 (the "'498 Patent"), 11,382,864 (the "'864 Patent"), and 11,638,697 (the "'697 Patent") (collectively, the "Asserted Patents"). The '656 and '697 Patents (the "Composition Patents") are directed to oral formulations that include sodium sulfate, magnesium sulfate, and potassium chloride in addition to other ingredients. *See* Ex. 1 ('656 Patent) at claim 1; Ex. 2 ('697 Patent) at claim 1.[1] The '864 and '498 Patents (the "Method Patents") are directed to methods of administering similar formulations in two separate doses. *See* Ex. 3 ('498 Patent) at claim 1; Ex. 4 ('864 Patent) at claim 1.

The parties' claim construction disputes focus on two issues: (1) the scope of claims reciting compositions "consisting essentially of" certain listed ingredients; and (2) whether the preambles recited in the independent claims of the Asserted Patents should be treated as limitations.

The first issue arises because the claims in the '498 and '864 Patents use the somewhat uncommon "consisting essentially of" transitional phrase. Construing claims that use the "consisting essentially of" phrase requires that the Court first determine the basic and novel properties of the invention, and then exclude any unnamed components that might materially affect those properties. In this instance, the alleged basic and novel properties of the claims involve colon

[1] All references to Exhibits are to those exhibits attached to the August 24, 2026 Declaration of Lindsey Brock, submitted herewith.

cleansing. Alkem's proposed construction makes this clear. In contrast, Plaintiffs' construction does nothing to clarify the scope of the "consisting essentially of" claims. Therefore, adopting Alkem's construction and defining the scope of the "consisting essentially of" claims will simplify the litigation moving forward.

The second issue arises because Plaintiffs assert that the preambles recited in the Asserted Patents should be treated as limitations. However, the preambles here are not limiting on the scope of the claims because they merely describe the purpose or intended use of the methods and compositions defined in the body of the claims. The Federal Circuit has repeatedly and consistently held that such statements of intended use are not limiting. Moreover, the body of the claims sets out the necessary steps and structures required for understanding the scope of the claims, and the preambles are not necessary for understanding the meaning of any terms in the body of the claims. In addition, the applicants did not rely on the preambles to distinguish the claims from the prior art during prosecution, and therefore this case is not one of the "rare instances" where a statement of intended use in the preamble should be constructed as a limitation.

## II. <u>THE ASSERTED PATENTS</u>

The Asserted Patents share a substantively identical specification that describes tablet formulations for inducing purgation and cleansing of the colon in preparation for imaging procedures, such as colonoscopies. *See* Ex. 1 ('656 Patent) at 2:18-38, 7:8-10. The disclosed formulations include three salts: magnesium sulfate, sodium sulfate, and potassium chloride. *Id.* at 2:42-50, 7:8-10. The specification discloses that this combination of salts "allows for inducing of osmotic diarrhea (i.e., purgation) while reducing clinically significant gains or losses of electrolytes (i.e., shifts of electrolytes) during the process of purgation." *Id.* at 7:13-17.

The Asserted Patents provide three exemplary tablet formulations of the alleged invention and describe a clinical study comparing the exemplary formulations with three prior art FDA-

approved colonoscopy preparations. *See id*. at 13:45-20:62. The specification discloses that the three exemplary formulations "provide[d] acceptable stool output, percent solids measurements and minimal absorption/secretion of electrolytes," and are therefore "eligible for further study in colonoscopy patients. *Id*. at 20:57-62.

## III. <u>LEGAL STANDARDS</u>

Claim construction seeks to give a term its plain and ordinary meaning when read in view of the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1316 (Fed. Cir. 2005) (*en banc*). This proceeding, however, deals with two less common claim construction issues.

***First***, the parties dispute how the infrequently-used transitional phrase "consisting essentially of" affects the claims' scope. Many patents use the transitional phrase "comprising," which results in an "open" claim and means that the claim scope can cover additional ingredients beyond those expressly listed in the claim. *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998). Others use the transitional phrase "consisting of," which closes the claim's scope to encompass only the articulated components and nothing else. *Id*. The "consisting essentially of" transitional phrase falls between these two extremes and "limits the scope of a claim to the specified ingredients and those that do not materially affect the *basic* and *novel* characteristic(s) of a composition." *In re Herz*, 537 F.2d 549, 551-52 (C.C.P.A. 1976) (emphases added). Thus, when a patentee uses the phrase "consisting essentially of," it signals the intention to limit the scope of the invention so that it is open only to "unlisted ingredients that do not materially affect the basic and novel properties of the invention." *PPG Indus.*, 156 F.3d at 1354.

Statements made during prosecution of a patent may inform "whether an unlisted ingredient was excluded from the scope of a 'consisting essentially of' claim." *Id*. at 1355. Likewise, the specification may make clear what the patentee "regarded as constituting a material change in the basic and novel characteristics of the invention." *Id*. For example, the specification

or prosecution history might identify a goal for the invention or distinguish it from the prior art. *HZNP Meds. LLC v. Actavis Lab'ys UT, Inc.,* 940 F.3d 680, 696 (Fed. Cir. 2019). Accordingly, courts construing a "consisting essentially of" term "may ascertain the basic novel properties of the invention at the claim construction stage, and then consider if the intrinsic evidence establishes what constitutes a material alteration of those properties." *Id.*

During claim construction, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. Indeed, even the prosecution from a related patent can help inform claim scope if "the scope of the claim limitation is substantially the same in the subsequent application as it was in the earlier application." *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 944 (Fed. Cir. 2013) (citing *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305 (Fed. Cir. 2001) (prosecution history may be relevant if "it addresses a limitation in common with the patent in suit")), *see also Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) ("[T]he prosecution history regarding a claim limitation … applies with equal force to subsequently issued patents that contain the same limitation.").

***Second***, this case asks whether the claim preambles should be limiting. The default rule is that the preamble does not limit the claims. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002); *American Med. Sys., Inc. v. Biolitek, Inc.*, 618 F.3d 1354, 1358-59 (Fed. Cir. 2010). A preamble may be limiting, however, "if it recites essential structure of steps" or otherwise "is necessary to give life, meaning, and vitality to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal quotations omitted). However, a preamble is "not limiting when the claim body describes a structurally complete

invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." *Id.* at 809. Likewise, a preamble that merely describes the intended use or purpose of the claimed invention is not limiting. *Marrin v. Griffin*, 599 F.3d 1290, 1294 (Fed. Cir. 2010); *see also Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim.").

Even if the preamble includes a term used elsewhere in the claim, it will not be limiting unless the claim drafters relied "on the preamble language to define or refine the scope of the asserted claims." *Am. Med. Sys.* 618 F.3d at 1359. Where the patentee "defines a structurally complete invention" in the body of the claim and "uses the preamble only to state a purpose or intended use for the invention," the preamble is not limiting. *Catalina*, 289 F.3d at 808.

# IV. ARGUMENT

## A. "Consisting Essentially Of" Terms

| Claim Term | Alkem's Proposed Construction | Braintree's Proposed Construction |
|---|---|---|
| "colon cleansing composition consisting essentially of [an/the] oral dosage form that comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride"<br><br>'498 Patent, claim 1 | "the composition contains no other ingredients that materially impact the colon cleansing properties of the composition besides 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride." | Plain and ordinary meaning, which is, "a colon cleansing composition that includes an oral dosage form and can additionally include other components that do not materially affect the basic and novel properties of that composition; wherein the oral dosage form comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride." |

| | | |
|---|---|---|
| "composition consisting essentially of about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride"<br><br>'864 Patent, claim 1 | "the composition contains no other ingredients that materially impact the colon cleansing properties of the composition besides 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride." | Plain and ordinary meaning, i.e., "composition that includes about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride, and can additionally include other components that do not materially affect the basic and novel properties of that composition" |

The parties agree that the transitional phrase "consisting essentially of" in the '498 and '864 Patents limits the scope of the claims. The parties also agree that the claims include a composition made up of "about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride." But the parties dispute what basic and novel properties are covered by the claims and what components are therefore excluded from the scope of the claims by the "consisting essentially of" language.

### 1. <u>Alkem's Construction Identifies The Basic And Novel Properties</u>

A "consisting essentially of" claim is unique in that the term allows some elements but excludes others based not on the express claim language, but on the alleged basic and novel properties of the claimed invention. *See PPG Indus.*, 156 F.3d at 1354. This is unlike a "comprising" claim, which is open to other elements, or a "consisting of" claim, which is closed to everything but the listed components. *Id.* Instead, determining the scope of a "consisting essentially of" claim requires the court to inquire into the alleged basic and novel properties of the invention to determine what falls within the scope of the claim. *HZNP*, 940 F.3d at 695-696. One reason that courts must identify the "basic and novel properties" of the invention when construing

a "consisting essentially of" claim is that the claim may be indefinite if the intrinsic evidence fails to provide reasonably clear guidance on the "basic and novel properties." *Id*. at 695.

Alkem's construction takes head-on the unique process of construing the asserted "consisting essentially of" claims. As set forth in Alkem's construction, the alleged basic and novel properties of the claim involve colon cleansing. As such, the "consisting essentially of" language excludes components that would materially impact the composition's colon cleaning properties. Plaintiffs' construction, in contrast, merely recites the legal meaning of the "consisting essentially of" language (i.e., reciting "the basic and novel properties of that composition"), yet fails to identify what the basic and novel properties of the composition are. Plaintiffs do not do the task of defining the claims' scope because Plaintiffs do not identify either the "basic and novel properties" or the "components that do not materially affect the basic and novel properties of that composition." Alkem's construction should be adopted because it accomplishes the goal of claim construction by defining the scope of the claims, which will simplify the litigation going forward.

Moreover, the intrinsic record supports Alkem's construction. First, the specification distinguishes the prior art based on colon cleansing: "The art has disclosed the use of non-aqueous formulations of sulfate and phosphate salts. However, these formulations have had drawbacks including insufficient *cleansing*." Ex. 3 ('498 Patent) at 2:1-3 (emphasis added); *see also id*. at 2:44-46 ("Aspects of the compositions disclosed herein include a solid oral dosage formulation for *cleansing a colon* of a subject." (emphasis added)). The specification likewise emphasizes that it discloses "methods for *cleansing of the colon* of a subject, as well as methods for *cleansing the colon*." *Id*. at 2:29-31 (emphasis added); *see also* 3:60-61 ("Further aspects include a method of cleansing a colon of a subject." (emphasis added)). Later, the specification explains: "when the formulations are administered to subjects with the amounts of magnesium sulfate and sodium

sulfate disclosed herein, the formulations will induce purgation of the colon and when administered in sufficient amounts will lead to *cleansing of the colon*." *Id.* at 6:52-57 (emphasis added). The dependent claims also support Alkem's construction. The dependent claims reciting polyethylene glycol (claim 2) and sodium caprylate (claim 4) inform a person of ordinary skill in the art that inclusion of those components does not affect the basic and novel properties of the alleged invention. The same may be true of additional excipients, provided they do not materially affect those basic and novel properties.

The prosecution history of the '498 Patent further supports Alkem's construction. The '498 Patent application was initially filed on December 3, 2018. On December 2, 2020, the applicant conducted an interview with the USPTO Examiner reviewing the '498 Patent application during which they discussed the Bachwich reference previously cited by the Examiner in rejecting the applicant's claims. Ex. 5 at AZ-SUT_0006734. During the interview, the applicant "discussed the background of colon cleansing products and explained why the magnesium citrate disclosed by Bachwich could not simply be switched for the magnesium sulfate recited" in the applicant's claims. *Id.* In response to the applicant's arguments about colon cleansing products, the Examiner "suggested adding 'consisting essentially of' in claim 65." *Id.* Then, pending claim 65 was later issued as claim 1 of the '498 Patent. The Examiner reasoned that "consisting essentially of" might distinguish Bachwich. *Id.*

Five days later, the applicant followed the Examiner's advice and added "consisting essentially of" to their claim:

> <u>Original Claim 65:</u> A method of cleansing the colon, the method comprising: a) administering a first dose of a colon cleansing composition **comprising** an oral dosage form that comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride; b) administering a first volume of liquid **after** the first dose; c) administering a second dose of the colon cleansing composition **comprising** the oral dosage form that

> comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride; and d) administering a second volume of a liquid **after** the first dose, wherein the colon cleansing composition cleanses the colon.
>
> Amended Claim 65: A method of cleansing the colon, the method comprising: a) administering a first dose of a colon cleansing composition **consisting essentially of** an oral dosage form that comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride; b) administering a first volume of liquid **within two hours of** the first dose; c) administering a second dose of the colon cleansing composition **consisting essentially of** the oral dosage form that comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride; and d) administering a second volume of a liquid **within two hours of** the first dose, wherein the colon cleansing composition cleanses the colon.

*Id*. at AZ-SUT_0006757. After the applicant added "consisting essentially of," thereby excluding other agents such as PEG from the claim scope, the Examiner allowed claim 65 in substantially the same form. *Id*. at AZ-SUT_0007202.

The prosecution history therefore indicates that Plaintiffs added the "consisting essentially of" term at the suggestion of the Examiner to overcome art cited in a previous rejection of applicant's claims. The clear intrinsic record therefore demonstrates that the "consisting essentially of" language excludes any additional component that could impact the colon cleansing properties of "about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride."

The use of "consisting essentially of" in claim 1 of the '864 Patent is similar to its use in the '498 Patent. Claim 1 of the '864 Patent simply removes any additional language related to the "dosage form." *Compare* Ex. 4 ('864 Patent) at claim 1 *with* Ex. 3 ('498 Patent) at claim 1.

The application underlying the '864 Patent is a continuation of the application which led to the '498 Patent, and was filed on June 14, 2021, after the '498 Patent received its Notice of Allowance. Ex. 6 at AZ-SUT_0007252. On June 14, 2021, the applicant filed a preliminary

amendment cancelling the initially filed claims and adding claims 21-31. Ex. 6 at AZ-SUT_0007328-29. Claim 21 of the newly added claims, which later issued as claim 1 of the ’864 Patent, includes the “consisting essentially of” limitation. *Id*. On January 25, 2022, the dependency of claim 25 was amended in response to a rejection, but no other changes to the claims were made. Ex. 6 at AZ-SUT_0007385. On February 16, 2022, the Examiner issued a Notice of Allowance and the claims were later issued as part of the ’864 Patent. Ex. 6 at AZ-SUT_0007394.

The ’864 Patent relies on the same “consisting essentially of” language without further substantive prosecution, has the same specification as the ’498 Patent, and was filed after the ’498 Patent had been allowed. Because the “consisting essentially of” terms in both patents are nearly identical, the prosecution history of the ’498 Patent is applicable to the interpretation of the “consisting essentially of” term in the ’864 Patent, and the “consisting essentially of” language should be construed to have the same meaning in both patents. *Elkay Mfg.*, 192 F.3d at 980 (“[T]he prosecution history regarding the claim limitation…applies with equal force to subsequently issued patents that contain the same claim limitation.).

**2. <u>The Court Should Not Adopt Plaintiffs’ Non-Construction</u>**

Plaintiffs’ purported “construction” generically recites the term “basic and novel properties” of the composition without further defining what they are, thus leaving one to guess as to the scope of the claims. This approach runs afoul of the “principle that a ‘patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement.’” *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F4th 1289, 1299 (Fed. Cir. 2021). Here, there is a limitation that excludes some components, but not others, based on the alleged basic and novel properties of the claimed invention, and the patentee relied on that limitation in securing allowance of the claims. The scope of that limitation is a legal issue that should be decided by the Court

during these claim construction proceedings. Yet Plaintiffs' construction asks the Court to leave the essential question of claim scope unresolved.

The Federal Circuit has acknowledged the mischief caused by not defining the basic and novel properties during claim construction. The Court explained in *HZNP*: "Two questions arise when claims use the phrase 'consisting essentially of.' One question focuses on definiteness: what are the basic and novel properties of the invention? The other question focuses on infringement: does a particular unlisted ingredient materially affect those basic and novel properties?" *HZNP*, 940 F.3d at 695. Resolving these questions is an essential part of the infringement analysis and may lead to summary judgment. *Id*. at 696. As a result, the Federal Circuit explained "that courts evaluating claims that use the phrase 'consisting essentially of' may ascertain the basic and novel properties of the invention at the claim construction stage, and then consider if the intrinsic evidence establishes what constitutes a material alteration of those properties." *Id*. at 696.

Plaintiffs' clearly hope to delay resolution of these claim interpretation issues. This will increase the resources needed from both the parties and the Court to conduct discovery and resolve infringement and invalidity issues in this case. To avoid this, the Court should follow the Federal Circuit's direction and "ascertain the basic and novel properties of the invention at the claim construction stage, and then consider if the intrinsic evidence establishes what constitutes material alteration of those properties." *Id*.

Plaintiffs also seek to introduce ambiguity by separating the "dosage form" element from the "consisting essentially of" limitation in their construction of claim 1 of the '498 Patent. To the extent Plaintiffs attempt to argue that the claims encompass dosage forms containing elements in addition to "about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride" that impact the basic and novel properties of the claimed

invention, this is counter to the prosecution history of the ’498 Patent. As discussed above, the Examiner made clear the applicant should add “consisting essentially of” to overcome a reference that had other ingredients, which affected its colon cleansing properties. Plaintiffs cannot now construe the claims to allow for inclusion of additional elements affecting the invention’s basic and novel characteristics. *PPG Indus.*, 156 F.3d at 1355.

For the reasons discussed above, the “consisting essentially of” limitations of the ’498 and ’864 Patents should be construed to mean “the composition contains no other ingredients that materially impact the colon cleansing properties of the composition besides 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride.”

### B. <u>The Preambles Are Not Limiting</u>

| Claim Term | Alkem’s Proposed Construction | Braintree’s Proposed Construction |
|---|---|---|
| “A method of cleansing a colon of a subject”<br>(preamble)<br><br>’864 Patent, claim 1 | The preamble is not limiting.<br><br>To the extent the preamble is found limiting, it should be given its plain and ordinary meaning of “a method that may result in some degree of cleansing of a colon of the subject upon which the method is applied.” | Preamble is limiting.<br><br>Plain and ordinary meaning, which is “a method of cleansing a colon of a subject. |
| “A method of cleansing the colon”<br>(preamble)<br><br>’498 Patent, claim 1 | The preamble is not limiting.<br><br>To the extent the preamble is found limiting it should be given its plain and ordinary meaning of: “A method that may result in some degree of cleansing of a colon.” | Preamble is limiting.<br><br>Plain and ordinary meaning, which is “a method of cleansing the colon” |
| “A solid oral formulation for cleansing a colon of a subject”<br>(preamble)<br><br>’656 Patent, claim 1 | The preamble is not limiting.<br><br>To the extent the preamble is found limiting, it should be given its plain and ordinary meaning of: “A formulation | Preamble is limiting.<br><br>Plain and ordinary meaning, which is “a solid oral formulation for cleansing a colon of a subject” |

| | | |
|---|---|---|
| ’697 Patent, claim 1 | provided as a solid that may be administered by an oral route.” | |

None of the preamble terms need construction because none of these terms are limiting. Instead, each preamble recites a generalized statement of intended use, either a “method of cleansing the colon”[2] (’864 Patent, claim 1; ’498 Patent, claim 1) or a “solid oral formulation for cleansing a colon of a subject” (’656 Patent, claim 1; ’697 Patent, claim 1). Such generic statements of intended use are routinely held non-limiting because they provide no essential structure or steps; instead, the body of the corresponding claim recites a structurally complete invention. *Catalina*, 289 F.3d at 808; *see also Marrin*, 599 F.3d at 1294 (noting that statements of intended use in a preamble “are rarely treated as claim limitations”). When the preambles neither “recite[] essential structure or steps: nor “give life, meaning, and vitality to the claim[s],” they are not limitations. *Catalina*, 289 F.3d at 808. For the reasons explained below with regard to the method patents and the composition patents, the Court should apply the default rule that the preamble of a patent claim is not a limitation. *Allen*, 299 F.3 at 1346. The intrinsic evidence – consisting of the claim language, the specification, and the prosecution histories – does not support treating preambles as limitations; instead, the preambles state the intended use of the claimed methods and compositions.

### 1. <u>The Method Patents</u>

The ’864 and ’498 Patents are generally directed to methods of administering compositions that include sodium sulfate, magnesium sulfate, and potassium chloride in different doses. *See* Ex. 3 (’498 Patent) at claim 1; Ex. 4 (’864 Patent) at claim 1. Claim 1 of the ’498 Patent illustrates these methods. Claim 1 recites:

[2] The preamble of the ’864 Patent recites a “method of cleansing a colon of a subject.” Ex. 4 (’864 Patent) at claim 1. Alkem does not believe the difference in phrasing should alter the analysis herein.

1. A method of cleansing the colon, the method comprising:
   a) administering a first dose of a colon cleansing composition consisting essentially of an oral dosage form that comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride;
   b) administering a first volume of liquid within two hours of the first dose;
   c) administering a second dose of the colon cleansing composition consisting essentially of the oral dosage form that comprises about 17.75 grams of sodium sulfate, about 2.7 grams of magnesium sulfate, and about 2.25 grams of potassium chloride; and
   d) administering a second volume of a liquid within two hours of the second dose, wherein the colon cleansing composition cleanses the colon.

Ex. 3 ('498 Patent) at claim 1. The '864 Patent is similar and likewise recites a "method of cleansing a colon of a subject" in the preamble followed by a series of "administering" steps involving a "dose of a colon cleansing composition" or a "volume of water" in the body of the claim. Ex. 4 ('864 Patent) at claim 1.

For both patents, the phrase "method of cleansing a colon [of a subject]" in the preambles is a statement of intended use for the subsequent series of "administering" steps, not a limitation on the claimed method. *Catalina*, 289 F.3d at 808. To be limiting, the preamble must do far more. For example, the preamble might be limiting if it included a method step necessary to perform the claimed methods. *Catalina*, 289 F.3d at 808. These preambles in the '498 and '864 Patents do not. A preamble might also be limiting if it gives "life, meaning, [or] vitality to the claims." *Id*. That is not the case here, since deleting the preamble from either claim would not affect any of the recited steps that make up the claimed methods in the least. *Catalina*, 289 F.3d at 809 (holding that a preamble is not regarded as limiting "when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention"). When the "steps of the…method are performed in the same way regardless whether or not the patient experiences [the intended result in the preamble]" that preamble is not limiting. *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001).

The Federal Circuit has repeatedly held similar preambles are not limiting. For example, a method "for reducing hematologic toxicity" was not limiting because (like here) the steps of the method "[we]re performed in the same way regardless whether or not the patient experiences a reduction in hematologic toxicity." *Id.* at 1375-76. A preamble reciting "[a] computer implemented method for pre-processing digital content in a client device for subsequent electronic distribution" was not limiting because (like here) the preamble was "duplicative of the limitations in the body of the claim and merely provid[ed] context for the limitations." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1292 (Fed. Cir. 2015). The preamble "a method of screening the data as it is being transferred" was held not limiting because (like here) the prosecution history failed to demonstrate "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Symantec Corp. v. Comp. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288 (Fed. Cir. 2008) (internal quotations omitted). And the preamble phrase "[a] method for photoselective vaporization of tissue" was not limiting because (like here) "the bodies of the asserted method claims contain all the steps necessary to practice the invention." *Am. Med. Sys. Inc.*, 618 F.3d at 1359-60.

There is one additional situation that could apply in theory to these preambles, but not in practice. When a preamble provides the "antecedent basis" for a later claim term, it may be limiting when certain conditions are met. But "the mere fact that a structural term in the preamble is part of the claim does not mean that the preamble's statement of purpose or other description is also part of the claim." *Marrin*, 599 F.3d at 1295. A preamble that provides the antecedent basis for a term in the body of the claim does not make the preamble limiting unless the preamble also provides "context ***essential*** to understand[ing] the meaning" of the term in the body. *Am. Med. Sys. Inc.*, 618 F.3d at 1359 (emphasis added). For example, in American Medical, the preamble

recited the term "photoselective vaporization of tissue" and the body of the claims recited the term "the tissue." *Id.* The defendant argued that the preamble was limiting because the "photoselective vaporization of tissue" provided antecedent basis for "the tissue" recited in the body. *Id.* The Federal Circuit disagreed, explaining that "[t]he preamble's reference to 'vaporization of tissue' does not specify a particular type or location of tissue being treated" and "the generic term 'tissue' in the preamble [did not] provide any 'context essential to understand[ing]' the meaning of 'the tissue' in the body of each claim." *Id.* (quoting *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1376 (Fed. Cir. 2005)).

This case is similar to, though even less compelling than, *American Medical*. The preambles at issue recite "the colon" and "a colon of a subject," and the body of the claims refers to "the colon." Ex. 3 ('498 Patent) at claim 1; Ex. 4 ('864 Patent) at claim 1. Like *American Medical,* the term "colon" in the preambles does not provide any essential context to understanding the meaning of "the colon" recited in the body of the claims. *See Am. Med. Sys. Inc.*, 618 F.3d at 1359. A person of ordinary skill in the art would be able to understand the meaning of "the colon," an anatomical reference, recited in the body of the claims without any reference to the preambles, which add no context for the term. The preambles do not specify any location or portion of the colon that is affected by the claimed methods, further demonstrating the lack of essential context they provide to "the colon" recited in the claim body. Accordingly, the generic reference to "colon" in the preambles of the Method Patents does not render the preambles limiting. *Id.*

**2. <u>The Composition Patents</u>**

The '656 and '697 Patents recite composition claims for oral formulations that include, *inter alia*, sodium sulfate, magnesium sulfate, and potassium chloride. *See* Ex. 1 ('656 Patent) at claim 1; Ex. 2 ('697 Patent) at claim 1. Claim 1 of the '656 Patent generally illustrates these compositions. Claim 1 recites:

> 1. A solid oral formulation for cleansing a colon of a subject; the formulation comprising from about 34.0 grams to about 38.0 grams of sodium sulfate, about 4.0 grams to about 8.5 grams of magnesium sulfate, and about 3.0 grams to about 5.0 grams of potassium chloride.

Ex. 1 ('656 Patent) at claim 1. The '656 and '697 preambles both recite "[a] solid oral formulation for cleansing a colon of a subject." *Id.*; Ex. 2 ('697 Patent) at claim 1. This preamble is not limiting for several reasons.

First, the preambles' reciting "for cleansing a colon of a subject" does nothing more than describe the intended use ("cleansing a colon of a subject") for each formulation defined in the body of each claim. Such statements of intended use in the preamble of composition claims are treated as limitations "only if the applicant clearly and unmistakably relied on those uses or benefits to distinguish prior art." *Catalina*, 289 F.3d at 809. That is not the case here—the applicant did not clearly and unmistakably rely on colon cleansing to distinguish the claims from the prior art and instead discussed elements recited in the body of the claims. *See, e.g.*, Ex. 7 at AZ-SUT_0006040-6045.

Deleting the preamble would not affect the structural requirements for the claimed compositions at all. The body of the claims recite the identity and amounts of the various components. The preambles' intended use imposes no limitation on those recited features. The body of the claims in the '656 and '697 Patents, not the preamble, sets out the essential structure of the claimed compositions, and the preamble is unnecessary to understand any of the limitations in the claim body. As such, the preamble is not limiting. *Catalina*, 289 F.3d at 810.

Second, the preamble claim term "solid oral formulation" also is not limiting. The mere fact that the preamble recites a "formulation," a term used later in the claims, does not make it limiting. As discussed above, a preamble that provides antecedent basis for a later claim term is only limiting if it provides essential context for understanding the claim. *See, e.g., Am. Med. Sys. Inc.*, 618 F.3d at 1359. Here, the preambles in the '656 and '697 Patents generically recite a "solid

oral formulation" that does not provide any essential context for understanding the meaning of "the formulation" recited in the body of each claim. But, even if the phrase "solid oral formulation" in the preambles did limit the claims' scope, the subsequently recited intended use "for cleansing a colon of a subject" still would not. That is because the fact that one phrase in a preamble "provides a necessary structure for [the claim] does not necessarily convert the entire preamble into a limitation, particularly one that only states the intended use of the invention." *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323-1324 (Fed. Cir. 2015).

*TomTom* illustrates that distinction. There, the Federal Circuit treated the structural phrase "destination tracking system of at least one mobile unit" as limiting, but held that the separate phrase "generating and updating data for use in" was not limiting because it merely stated "a purpose or intended use." *Id.* Likewise, even if "solid oral formulation" provides a necessary structure the claim it does not necessarily convert the separate intended use phrase "for cleansing the colon" into a limitation. Thus, like the statement of intended use addressed in *TomTom*, the phrase "for cleansing the colon" in the preambles of the Composition Patents "is not limiting and does not provide an antecedent basis for any of the claims." *Id.* Any antecedent basis for "the formulation" comes from the phrase "solid oral formulation." The separate statement of intended use does not provide antecedent basis for a subsequent limitation.

### 3. <u>To The Extent The Preambles Are Limiting, The Court Should Adopt Alkem's Proposed Constructions</u>

If the Court concludes that the preambles in the Asserted Patents are limiting, the Court should adopt Alkem's proposed constructions for each of the preambles, which reflect the plain and ordinary meaning of the preamble phrases in view of the intrinsic evidence.

For the Method Patents, Alkem's proposed constructions clarify that the preambles would require that the methods "may result in some degree of cleansing of a colon." In other words, the

preamble does not require that the method results in a particular degree of colon cleansing for all subjects or require that all subjects achieve some undefined level of cleansing. Instead, consistent with the plain meaning of "the method of cleansing a colon [of a subject]," the preamble language would be satisfied so long as some degree of colon cleansing may occur using the method. Alkem's construction is consistent with the specification, which broadly describes methods that may "induce purgation of the colon," but does not require that the described methods result in any particular degree of colon cleansing or purgation. *See*, Ex. 3 ('498 Patent) at e.g., 10:53-11:2, 20:45-67.

For the Composition Patents, Alkem's proposed construction clarifies that the preamble would require the formulation to be a solid that may be administered by an oral route. This construction reflects the plain and ordinary meaning of "[a] solid oral formulation." As explained above, the statement "for cleansing a colon of a subject" describes an intended use of the claimed compositions, and therefore should not limit the scope of the composition claims even if the Court concludes that the "solid oral formulation" recited in the preamble is a limitation. *TomTom*, 790 F.3d at 1323-1324.

Plaintiffs' proposed constructions for the preamble terms, in contrast, simply restate the claim language and are unhelpful in determining the meaning of the claims. These constructions underscore that the preambles recite an intended use and should not be limiting in the first place. In particular, Plaintiffs' proposed construction for the Composition Patents improperly restrict the composition claims to a particular intended use that does not affect any of the structural requirements for the compositions, effectively transforming the composition claims into method claims. Such a construction is wrong because "preambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims

depends on the claimed structure, not on the use or purpose of that structure." *Catalina*, 289 F.3d at 809; *see also TomTom, Inc.*, 790 F.3d at 1323-1324.

#### 4. <u>The Prosecution Histories Do Not Support Construing The Preambles As Limitations</u>

Nothing in the prosecution histories supports construing the preambles as limiting. Statements of intended use in a preamble may be limiting where "the applicant clearly and unmistakably relied on those uses or benefits to distinguish the prior art," but the prosecution histories here do not show that the applicants "clearly and unmistakably relied" on the intended use of "cleansing the colon." *Catalina*, 289 F.3d at 809.

During prosecution of the '656 patent, in a March 12, 2018 Amendment (the "March 2018 Amendment") distinguished Bachwich on the ground that "Bachwich does not teach or suggest the unexpected result that solid formulations can be produced that avoid clinically significant electrolyte shifts." Ex. 7 at AZ-SUT_0006038. As noted above, the applicant argued that the magnesium citrate disclosed by Bachwich could not simply be switched for the magnesium sulfate recited in the claims. The applicants asserted this was an "unexpected and surprising result" discovered by the inventors. *Id.* at AZ-SUT_0006040. The applicant's argument during prosecution thus relied on those asserted results as evidence supporting patentability, rather than treating "cleansing the colon" as a claim limitation supplied by the preamble.

Similarly, during prosecution of the '498 patent in a December 8, 2020 Amendment (the "December 2020 Amendment") the Applicants likewise distinguished Bachwich based on language in the body of the method claims. The Applicants argued that "Bachwich did not teach the specific water regimen claimed in the methods" and relied on that water regimen to distinguish the reference, rather than on the preamble language or on "cleansing the colon" as a separate limitation. Ex. 5 at AZ-SUT_0006763.

The reasons for allowance also do not establish reliance on preambles. For the ’864 patents, the Examiner stated that the search did not reveal “a reference that teaches a method of cleansing a colon of a subject **comprising the steps recited in the instant claims**.” Ex. 6 at AZ-SUT_0007396 (emphasis added). For the ’656 patent, the Examiner listed the entirety of the claim language, including the preamble phrase “a solid formulation for cleansing a colon of a subject,” as “limitations” that were not disclosed by the prior art. Ex. 7 at AZ-SUT_0006057. However, the inclusion of the preamble in that listing of claim language does not demonstrate that the applicant “clearly and unmistakably” relied on the intended use of colon cleansing to distinguish the prior art, as required to construe the intended use as a limitation on the composition claimed by the ’656 patent. *Catalina*, 289 F.3d at 809.

## V. CONCLUSION

For the reasons set forth above, the Court should adopt Alkem’s constructions for the disputed terms.

Dated: August 24, 2026

/s/ Rebekah R. Conroy
Rebekah R. Conroy, Esq.
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, NJ 07932
Tel: (973) 400-4181
rconroy@stoneconroy.com
OF COUNSEL:
Neal Seth
WOODS ROGERS
VANDEVENTER BLACK PLC
1765 Greensboro Station Place
Suite 900
Tysons, VA 22102
Tel: (703) 215-8208
neal.seth@woodsrogers.com
*Attorneys for Defendant Alkem Laboratories Ltd.*